CLEVELAND, S. W. & COL. RY. v. KATHERINE CRANDALL, ADMR.

1. KNOWLEDGE OF ONE JOINT USER OF WIRE POLES DOES NOT EXCUSE OTHER OF DUTY OF CARE TOWARD EMPLOYES OF OTHER.

When a telephone company by agreement uses the high-tension wire poles of an electric railway, the fact that the telephone company knew that a dangerous current of electricity was leaking from the railroad wire through the insulators into the poles does not relieve the railway company from its obligation of care to an employe of the telephone company who was injured by such negligent leakage.

2. INSTRUCTION REQUESTED MUST STATE LAW CORRECTLY.

A request to charge before argument must state the law applicable to the case without modification or explanation, and it is not error to refuse one which does not do so.

3. THE WORDS "MIGHT BE" IN AN INSTRUCTION MAY BE AMBIGUOUS.

The words "might be" in a request to charge in substance that if employe of telephone company using poles of railroad company, knew or by the exercise of ordinary care "should have known that the dispatcher's wires might be charged with a dangerous current of electricity," etc., are too uncertain and ambiguous and it is not error to refuse such charge.

4. NOT ERROR FOR COURT TO VOLUNTARILY STATE CORRECT LEGAL PROPOSITION TO JURY BEFORE ARGUMENT.

It is not error for the court after refusing to charge an incorrect instruction before argument, to voluntarily state a correct proposition of law covering the point attempted in the instruction requested.

ERROR to Lorain common pleas court.

A. V. Andrews and Q. A. Gillmore, for plaintiff in error.

Herrick & Hopkins and Ingersoll & Stetson, for defendant in error.

MARVIN. J.

The relation of the parties to each other here is the reverse to that in which they stood in the court below. The terms plaintiff and defendant, however, used in this opinion, will refer to the parties as they stood in the original case.

Suit was brought by the administrator to recover for the alleged wrongful death of Hubert Crandall, which occurred on the third day of August, 1906. At that time Crandall was in the employ of the Elyria Telephone Company, hereinafter spoken of as the telephone company, and the suit was brought against both the Cleveland, Southwestern &

*Reversed, no op., *Cleveland, S. W. & C. Ry.* v. *Crandall*, 55 Bull. 395; 83. O. S. 000.

Railway v. Crandall.

Columbus Railway Co., hereinafter spoken of as the railway company, and the telephone company, the telephone company, however, was dismissed out of the case, and the action proceeded with against the railway company alone, resulting in a verdict and judgment for the plaintiff.

The petition sets out that the railway company operated an electric railroad from the city of Elyria to Grafton, and that upon the poles of the railway company the telephone company had, by an arrangement with the railway company, its wires stretched. The wires of the railway company carried on said poles consisted of four high tension wires, so-called, on which it transmitted an electrical current of about twenty-two thousand volts for the purpose of propelling its cars. There were three of these high tension wires which were insulated by means of glass or porcelain placed on cross bars attached to the tops of the poles. The railway company also carried on said poles wires known as dispatcher wires; these were also carried on insulators which were fastened to the pole close to the sides, one beneath the other, and some six or seven feet below said high tension wires. These dispatcher wires were used for telephone purposes by the railway company, and between, in altitude, said high tension wires and said dispatcher wires, the telephone company maintained a cable.

On the third day of August, 1906, the decedent, pursuant to instructions from the telephone company, went out along the line from Elyria towards Grafton, for the purpose of ascertaining, if possible, the cause of some trouble which the telephone company was experiencing in the use of the cable. He climbed a pole of the railway company on which wires of both companies were maintained, as already described, and he there received a shock of electricity which caused him to fall to the ground, and resulted within a few hours in his death. The petition further states that the location of these wires of the railway company and the cable of the telephone company was such that if the current from said high tension wires leaked over or through said insulators and passed down the poles toward the ground, there was great danger and probability that it would pass into the dispatcher's wires and the messenger wires forming said cable, and render the same highly dangerous to the lives of linemen working on such poles, and that these facts were well known to both of the defendants. The petition further states that for several days preceding the third day of August, 1906, the railway company negligently and recklessly permitted said high voltage current to leak from said high tension wires into the poles and down and

Lorain County.

into said messenger or dispatcher wires, or both, and that the plaintiff's decedent met his death through such negligence on the part of the railway company in permitting said leakage to take place, when it well knew of the same and that said leakage was likely to cause such injuries as those suffered by the plaintiff's decedent.

The answer of the railway company admits the employment of the decedent by the telephone company; admits that it maintained wires on its poles and that the telephone company also maintained wires on said poles, under an arrangement with it, and admits that the decedent met his death at the time alleged in the petition, and denies all other allegations of the petition.

The defendant claims that there was error on the part of the court in admitting any evidence, as against it, over its objection under the petition, and for ground for this claim says that the allegation in the petition that the decedent's employer (the telephone company), had knowledge of the situation and danger, if there was danger, at the place where the decedent was injured, relieved the railway company from any obligation of care to the decedent. It, of course, admits that if the decedent had been in its employ it would have been required to exercise due care for him, but that its obligation is different to the employes of the company using with it these poles. In support of this claim there is cited to us the case of *Cincinnati Gas & Elec. Co.* v. *Archdeacon*, 80 Ohio St. 27. We do not understand that the doctrine announced in that case sustains the position claimed for it here. The first clause of the syllabus reads:

"When two companies engaged in enterprises calling for the use of wires to carry electricity arrange for the joint use of a pole to sustain them, each company is, with respect to such use, charged with the the telephone company had knowledge of the dangerous situation at the place where the decedent was injured, the pleadings left this an open question. It is further urged that the verdict was not sustained by the evidence. We are not prepared to say that this claim is true, and without undertaking to review the evidence we reach the conclusion that the jury might well have believed that without any negligence on the part of the decedent, and because of the negligence of the railway company, he received the electric shock which either directly caused his death or which caused him to fall with such force upon the ground as to cause his death.

Complaint is further made that the court erred in refusing to give in charge to the jury certain requests which the defendant had asked

Railway v. Crandall.

to have given in writing before the argument to the jury. . The first request made, was given. The second, refused, reads, as follows:

"If the Elyria Telephone Company knew that there was constant and continuous danger of a leakage of current over or through the insulators and down the poles of the Cleveland, Southwestern and Columbus Railway Company, on the Grafton line here in question, before the injury and death of said Hubert Crandall, then it owed the duty to Hubert Crandall to notify him of such conditions, unless he by the exercise of ordinary care should know of such dangers; and the Cleveland, Southwestern and Columbus Railway Co. was not required, in the exercise of ordinary care, to give notice either to said the Elyria Telephone Co., or to said Hubert Crandall of such conditions."

There was no error in refusing this request. . If this had been given the railway company would have been relieved of the exercise of any care for the safety of the employes of the telephone company while they were working on the poles used in common by the two companies, and with full knowledge on the part of the railway company that the employes of the telephone company were being put in a place of danger on their poles which were rendered dangerous by their negligence.       .

We think *Cincinnati Gas & Elec. Co.* v. *Archdeacon, supra,* fully justified the court in refusing this request.       .

The third request reads:

"If Hubert Crandall knew or by the exercise of ordinary care for his own safety should have known or foreseen that the dispatcher's wires here in question might be charged with a dangerous current of electricity, when he climbed the pole at the time in question, and if he could have avoided said wires by the exercise of ordinary care, your verdict should be for the defendant."

This was refused, and properly.

It must. be remembered that when a request is made in writing, to be charged in writing before argument, the court must refuse to give such request, unless, without modification, or explanation, the request properly states the law applicable to the case. If this request had been given, it would have in effect held that if the deceased by the exercise of ordinary care would have known that the dispatcher's wires might by possibility have had a dangerous current of electricity upon them, it would be negligence on his part not to test them before using. It will be noticed that the words are "might be charged with a dangerous current." The words "might be" as used in the sentence asked to be

charged are susceptible clearly of the meaning "were possibly," and so it would have been said to the jury that if Crandall knew that these wires "were possibly" charged, that is, that they "might possibly" be charged with the electricity, surely the proposition charged in those words would have been erroneous.

It is true that the words "might be" as here used, are susceptible of the meaning "were probably" or "were likely to be," but they are susceptible of the other meaning also, and so to have given the charge, as requested, would have been likely to mislead the jury, for we may as well suppose the jury would have been as likely to give the meaning first suggested as that last suggested to these words.

Surely it cannot be said of one that he is negligent because he takes a cup of coffee at a hotel dinner without first testing or having it tested. If he knew facts which authorized the belief that there *"might"* be poison in the coffee, using the word "might" in the sense of probability, then he would be negligent in drinking the coffee without testing it, but if he only knew what we all know, that the coffee *"might"* have poison in it, in the sense that it was possible that there was poison in it, then he would not be negligent in drinking it without first testing it. If this be not true, then all of us who partake of food or drink, without first testing it, are negligent.

The same reason for refusing to give request No. 3 would justify also the refusal to give Nos. 4, 6, 9 and 11.

The refusal to give No. 5 is justified because it puts upon the decedent the burden of assuming risks growing out of the negligence not of his own employer, but of another corporation, which is putting a greater burden upon him than the law requires.

No. 7 was properly refused for the reasons given in saying that the petition stated a cause of action, and is justified, as we think, by *Cincinnati Gas & Elec. Co.* v. *Archdeacon, supra.* This would also justify the refusal to give No. 8. Request No. 10 was properly refused because it would require of Crandall that he should have avoided the dispatchers wires independently of any knowledge on his part that they were dangerous.

No. 16 was properly refused under *Cincinnati Gas & Elec. Co.* v. *Archdeacon, supra.*

Before the argument the court gave in charge to the jury the following:

"It is not charged in the petition that the defendant railway company was negligent in failing to warn or give notice to Hubert Crandall

### Railway v. Crandall.

or his employer of the condition of its wires along the Grafton line at and before the accident, and therefore such failure, if such there was, cannot be considered by you as a negligent act or omission on the part of said defendant railway company.''

Although this was not given upon request of anybody and though the court was not at liberty to refuse to give any request which was made, which properly stated the law applicable to the case, a refusal to give any such request would not be cured by substituting words more satisfactory to the court than those used in the request. However, we have already pointed out that the court was justified in refusing the request made and the matter might well have been left there until after the case was argued, but as what was said by the court here could surely not be complained of by the defendant, because it stated the law on the point as favorably for the defendant as it could be stated, the defendant was not prejudiced by this language of the court though given before argument.

The charge given by the court at the close of the argument of the case was an admirable statement of the law applicable to the case. We think, in every respect, it was not only fair but clear, so that if the result reached was not what it should have been, it was not because of the charge of the court.

Other errors complained of have been examined, but none are found which would justify a reversal of the judgment, and such judgment is affirmed.

Henry and Winch, JJ., concur.